# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO
───────────

HAROLD RUSHING,

      Plaintiff,

vs.                                          No. CIV 03-901 WJ/LCS

ZIA NATURAL GAS COMPANY,
A DIVISION OF NATURAL GAS PROCESSING CO.,

      Defendant.

## MEMORANDUM OPINION AND ORDER
## GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

THIS MATTER comes before the Court upon the Motion for Summary Judgment by

Defendant Zia Natural Gas Company ("Zia"), filed January 23, 2004 (**Doc. 16**). Plaintiff Harold

Rushing ("Plaintiff") is suing his employer for discrimination based on age and disability, or

perceived disability, following surgical treatment for a heart attack. The Complaint includes

claims under the Age Discrimination in Employment Act, 29 U.S.C. § 621-634 ("ADEA"); the

Americans with Disabilities Act, 42 U. S. C. § 12101 - 12213 ("ADA"); the Family Medical

Leave Act, 29 U.S.C. § 2615 ("FMLA"), and the New Mexico Human Rights Act, N.M.S.A.

1978, § 28-1-1 et seq. ("NMHRA"). After considering the pleadings filed in connection with and

in response to Defendant's Motion for Summary Judgment, after considering oral arguments of

counsel and after being fully informed on the applicable law, I find that Defendant's Motion for

Summary Judgment is well taken and shall be granted for the reasons set forth below:

## BACKGROUND

Plaintiff was 53 years old at the time he filed the complaint, and worked for Zia as a

natural gas utility service technician from 1989 until his termination in October, 2002.[1] He had

previously worked for Zia's predecessor since 1972 in the same position. The incidents giving

rise to the complaint followed a heart attack Plaintiff suffered on June 14, 2002. He was

surgically treated with the insertion of a pacemaker.[2] He remained in the hospital for two weeks,

and was released to bed rest on July 14, 2002. Plaintiff assumed that he would be using his

accumulated sick leave and vacation time while he was recuperating, prior to using extended leave

under the Family Medical Leave Act ("FMLA"). Plaintiff disputes the exact date his accumulated

annual and sick leave was exhausted, but at the same time, agrees that October 20, 2002 is correct

as the date his FMLA leave expired (lasting "a period of 12 weeks"). Response at 4. While the

facts in a summary judgment motion must be considered in the light most favorable to the Plaintiff

as non-movant, Plaintiff nevertheless must meet his burden of presenting genuine issues of

material fact in response to Defendant's statement of facts, and "cannot rest upon mere

allegations or denials of the pleadings." Orback v. Hewlett-Packard Co., 97 F.3d 429, 432 (10th

Cir. 1996) (citation omitted). Thus, Plaintiff's admissions regarding the expiration of his extended

leave under the FMLA, together with the uncontroverted evidence Plaintiff himself has submitted

in this regard, would make Defendant's calculation of July 15, 2002 (approximately) as the

exhaustion date for Plaintiff's accumulated sick leave and vacation time, correct as well. See,

Def't's Ex. 2; Mem. Brf. at 2. Plaintiff did not make a request for extended leave under the FMLA

_____

[1] Zia is a regulated public utility which acquired the Ruidoso Natural Gas Company in 1989.

[2] Plaintiff's description of the emergency surgical procedure states that stints and a "CTS type defibrillator were inserted into his heart arteries." Response at 3.

until September 10, 2002.[3]

On August 23, 2002, Plaintiff provided to Zia a Medical Certificate for Return to Work, which restricted Plaintiff to light duty, including both weight lifting and driving restrictions. On September 18, 2002, Plaintiff submitted a revised Medical Certificate for Return to Work, which modified the weight lifting restriction to reflect a medium duty work load, but kept the same driving restriction.[4]

Almost two months after his accumulated sick leave and vacation time was exhausted, Plaintiff was asked to voluntarily resign his position on September 10, 2002. Plaintiff refused to come in to sign the termination papers. Instead, his wife came in to deliver Plaintiff's request for "extended medical leave starting July 21, 2002 thru [sic] Oct. 20, 2002." Ex. 2. Zia granted the leave retroactively.[5] Plaintiff also claims that a few days after he refused to resign, Defendant expressed "dissatisfaction" with the medical report it received and ordered Plaintiff to obtain a further medical report before his extended leave could be approved. He also claims that he was told he would have to obtain a full medical release without restrictions before he could return to work. Parties dispute what Plaintiff was told as far as the possible availability of work given his

---

[3] This date changes from September 10, 2002 to September 20, 2002 in the pleadings. Cmp, e.g., Pltff's Resp. at 7 with Initial Pretrial Report at 3; and Deft's Mem. Brf. at 5, Fact No. 2 with Deft's Answers to Interrogatories (Pltff's Ex. F, at 6). For the sake of consistency, I use the September 10, 2002 date as used in the Complaint, ¶ 20 ("on or about September 10, 2002").

[4] Plaintiff's driving restrictions followed federal regulations, ensuring that the pacemaker is functioning properly and the patient is not subject to seizures.

[5] Plaintiff disputes that his wife requested leave retroactively. However, he does not dispute that the leave was in fact granted retroactively, nor can the chronology of dates regarding accrued leave exhaustion and extended leave exhaustion be reconciled any way other than to allow that Zia granted extended leave first requested on September 10, 2002 starting from a date almost two months earlier, i.e., *retroactively*.

medical restrictions.  Plaintiff claims that Chad Reynolds, his immediate supervisor, told him that there was light duty work available doing service work in the shop, but that Plaintiff would first need to get approval from David Hamilton, President of Zia.  Defendant presents evidence in the form of Reynold's affidavit testimony in which Reynolds only mentioned that it would be nice if there were light duty work available.  Reynolds testified that there were no light duty positions available in the company and he did not have the authority to create such a position.  Plaintiff states that from September 12, 2002 to October 18, 2002, he attempted to reach Hamilton at the corporate headquarters, but was unsuccessful.  Instead, on October 20, 2002, he received a certified letter stating that he was terminated effective the following day because his FMLA leave had expired.  Plaintiff did not reapply for any position with Zia after he was terminated in October, 2002.  Plaintiff filed a charge of discrimination based on medical disability with the EEOC on January 30, 2003.

Plaintiff contends that Defendant's rationale for terminating him, i.e., company down-sizing and job consolidation, together with his driving restriction imposed after his heart attack, is a pretext for discriminating against him based on age and disability.  He also asserts that reasonable accommodations were possible during his recuperation, such as light duty at the Ruidoso Down office, doing inventory and vehicle maintenance, assignment of right of way leaks which he could perform with a four wheel vehicle, or extending his unpaid leave until January 5, 2003, when his driving restrictions ended.  Defendant maintains that driving is an essential part of the job for service technicians, who are all cross-trained, and are expected to be able to drive when assigned to meter-reading duties and doing after-hours service calls.

**DISCUSSION**

Summary judgment is appropriate where no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, that party must "go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to that party's case in order to survive summary judgment." Ford v. West, 222 F.3d 767, 774 (10th Cir. 2000) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)) (internal quotes omitted).

**I.      Discrimination Based on Disability**

Both the New Mexico Human Rights Act ("NMHRA") and the Americans with Disabilities Act ("ADA") prohibit discrimination in the work place against qualified persons with a disability.   The analytical framework used in ADA claims has been applied to claims brought under the NMHRA.  Also, the terms in both statutes have been used interchangeably.  See Trujillo v. N. Rio Arriba Elec. Coop., 131 N.M. 607, 613 (2002). Thus, the analysis pertaining to Plaintiff's ADA claim is applicable to his claim brought under the NMHRA.

To establish a prima facie case of discrimination under the ADA, a plaintiff must show "(1) that he is disabled within the meaning of the ADA; (2) that he is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) that he was discriminated against because of his disability." Davidson v. AOL, Inc., 337 F.3d 1179 (10th Cir. 2003) (citations omitted).

A.      Whether Plaintiff is Disabled Under the ADA

The ADA defines a "disability" as "(A) a physical or mental impairment that substantially

limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2); <u>Pack v. Kmart Corp.</u>, 166 F.3d 1300 (10th Cir.1999). Consideration of whether Plaintiff has a physical or mental impairment that substantially limits one or more of the major life activities of such individual is itself a three-step inquiry. <u>Doyal v. Oklahoma Heart, Inc</u>. 213 F.3d 492 (10th Cir. 2000) (citing <u>Bragdon v. Abbott</u>, 524 U.S. 624 (1998)). First, the Court must determine whether Plaintiff has an impairment. Second, the Court must identify the life activity upon which Plaintiff relies and determine whether it constitutes a major life activity under the ADA. Third, the Court asks whether the impairment substantially limited the major life activity.

Whether a plaintiff has an impairment within the meaning of the ADA, and whether the conduct affected is a major life activity for purposes of the ADA are legal questions for the court to decide. However, a plaintiff is required to articulate with precision the impairment alleged and the major life activity affected by that impairment. <u>Poindexter v. Atchison, Topeka & SF Railway Co.</u>,168 F.3d 1228, 1231 (10th Cir. 1999) (citing 29 CFR § 1630.2(h)).

*1.    Impairment*

The ADA does not define "impairment." However, under the EEOC's interpretive guidelines, a   physical or mental impairment includes cardiovascular disorders. <u>Poindexter v. Atchison, Topeka & Santa Fe Railway</u>, 168 F.3d 1228, 1230 (10th Cir.1999) (citing 29 C.F.R. § 1630.2(h) (1998)).[6] Further, the existence of an impairment "is to be determined without regard

---

[6] The regulation states that a physical or mental impairment is: (1) any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems:  neurological, musculoskeletal, special sense organs, respiratory (including speech organs), *cardiovascular*, reproductive, digestive,  genito-urinary, hemic and lymphatic, skin, and endocrine . . . ." (emphasis added). <u>See</u> <u>also</u>, 42 U.S.C. § 12116 (requiring

to mitigating measures such as medicines, or assistive or prosthetic devices." <u>Sutton v. United Airlines</u>, 130 F.3d 893, 897-98 (10th Cir.1997), <u>aff'd</u>, 527 U.S. 471, 899 (1999) (citing 29 C.F.R. § 1630, App. § 1630.1(a) and 2(h). Parties do not concede that Plaintiff is disabled under the ADA. In fact, Defendant argues that Plaintiff has even failed to identify an impairment upon which to base his alleged disability, pointing to vague references in the Complaint to "qualified person with a disability or perceived to have a disability," Complaint, ¶ 32, and "temporary medical condition," Complaint, ¶ 34. Although the Complaint is not artfully drafted, the facts and allegations set forth in that pleading establish that the "medical condition" referred to is Plaintiff's heart condition which gave rise to the limitations imposed by his physician.

It would seem commonly accepted, and I find in this case, that a heart condition is a physical disability. <u>See</u>, <u>e.g.</u>, <u>Jewell v. Reid's Confectionary Co.</u>, 172 F.Supp.2d 212, 215 (D.Maine 2001) (heart condition per se physical disability, but leaving question of whether the condition is disabling to an individualized inquiry). However, whether a heart condition rises to the level of a disability under the ADA is a more complex issue, and is an individualized inquiry since what is substantially limiting physical incapacity for one person may not be for another. <u>Jewell</u>, 172 F.Supp.2d at 215; <u>Sutton v. United Airlines</u>, 527 U.S. 471, 483 (1999) (determinations regarding disability under the ADA is not necessarily based on the name or diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual") (citing 29 C.F.R. pt. 1630 app., § 1630.2(j); <u>Dutcher v. Ingalls Shipbuilding</u>, 53 F.3d 723, 725 (5th Cir.1995) ("A physical impairment, standing alone, is not necessarily a disability as contemplated by the ADA.").

---

the EEOC to issue regulations to implement Title I of the ADA).

2.      *Major Life Activity Affected*

In order to state a claim under the ADA, a plaintiff must articulate with precision the impairment alleged and the major life activity affected by that impairment. <u>Poindexter</u>,168 F.3d at 1231 (citing 29 CFR §. 1630.2(h)).  Here again, the regulations are particularly helpful in defining the term by providing a non-exhaustive representative list of major life activities which includes functions such as "caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." <u>Bragdon v. Abbott</u>, 524 U.S. 624 (1998)); <u>Sutton</u>, 527 U.S. at 480 (citing 29 CFR § 1630.2(i)); <u>see</u> <u>also</u> <u>Doyal v. Oklahoma Heart, Inc</u>. 213 F.3d 492, 495-96 (10th Cir. 2000) ("Major life activities include such functions as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, sleeping, sitting, standing, lifting, reaching, and working").

Defendant's objection to the vagueness in the Complaint is well-taken with regard to Plaintiff's failure to specify what major life activity is affected by his impairment.  I exclude activities of "driving" and "lifting" as contenders, because there is no legal basis to conclude that "driving" is a major life activity.  <u>Pack v. Kmart Corp.</u>,166 F.3d 1300 (10th Cir. 1999) (question is whether activity is significant within meaning of the ADA, rather than whether that activity is important to the particular individual).  Also, Plaintiff states the requested reasonable accommodations in terms of non-driving duties and not lifting, where the restrictions were moderate to minimal.[7]  However, the allegations in the Complaint are sufficiently presented in

_____

[7]  Also, Plaintiff's lifting restrictions were not sufficient to support a finding that they "substantially limited" the major life activity of lifting.  <u>See</u>, <u>Bristol v. Bd. of County Commissioners of the County of Clear Creek et al</u>., 281 F.3d 1148, 1161 n.4 (10th Cir. 2002) (citing authority which states that 25 pound lifting restriction for continuous lifting and a 50 pound restriction no more than twice a day did not "substantially limit" plaintiff's ability to lift).

terms of restrictions on Plaintiff's job duties so that I may construe "working" to be the major life activity asserted by Plaintiff. The Tenth Circuit recognizes that working is a major life activity. Doebele v. Sprint/United Management Co., 342 F.3d 1117 (10th Cir. 2003).

     *3.     Whether Impairment Substantially Limits Plaintiff's Ability to Work*

     The inquiry into whether Plaintiff is disabled under the ADA continues with the critical step of determining whether Plaintiff's heart condition (and contingent restrictions as they existed) substantially limited his ability to work. See, Santiago Clemente v. Executive Airlines, 7 F.Supp.2d 114 (D.Puerto Rico1998) (plaintiff who proved impairment prong, but failed to establish "substantially limit" prong failed to meet her burden, since record must contain evidence supporting all three prongs of inquiry) (citing Ellison v. Software Spectrum, Inc., 85 F.3d 187, 191 (5th Cir.1996) (holding that although employee's breast cancer was an "impairment" within the meaning of the ADA, she failed to establish that it substantially limited major life activity so as to establish ADA claim).[8]

     In order for an impairment to be substantially limiting, an individual must be (1) unable to perform a major life activity that the average person in the general population can perform; or (2) significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can perform that same major life activity.

---

    [8] This part of the inquiry is normally a fact issue for the jury, but can be decided on summary judgment in proper circumstances, i.e., when a plaintiff fails to create an issue of fact on the question of whether an impairment "substantially limited" a major life activity. Doebele v. Sprint / United Management Co. 342 F.3d 1117 (10th Cir. 2003) (citing Bristol, 281 F.3d at 1161 n.5 (10th Cir. 2002)).

Doyal, 213 F.3d 492; 29 C.F.R. § 1630.2(j)(1). Certain factors are considered in determining whether an individual is substantially limited in a major life activity: (1) The nature and severity of the impairment; (2) The duration or expected duration of the impairment; and (3) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment. Id.; Sutton,130 F.3d at 897-98 (10th Cir.1997), aff'd, 527 U.S. 471 (1999); 29 CFR § 1320.2(j)(1)& (2). With respect to being substantially limited in the major life activity of working, an individual must show that he is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3)(i).[9] Thus, Plaintiff must show that his medical restrictions substantially limited him in a broad range of jobs, not just a particular job. Doebele, 342 F.3d at 1133 (citing Sutton, 527 U.S. at 491-92) (10th Cir. 2003).

Plaintiff's relevant "substantial limitations" take the form of the lifting and driving restrictions imposed subsequent to his heart attack. Plaintiff alleges no other medical restrictions as a result of his heart condition. In late August of 2002, Plaintiff's medical certificate indicated a lifting restriction of 20 pounds maximum (with frequent lifting and/or carrying of objects weighing up to10 pounds), and was modified in mid-September to 50 pounds maximum (with frequent

_____

[9] "Class of jobs" is defined in the regulations as "[t]he job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment." 29 C.F.R. § 1630.2(j)(3)(ii)(B). The regulations define a "broad range of jobs in various classes" from which an individual's impairment has disqualified him as "[t]he job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment." 29 C.F.R. § 1630.2(j)(3)(ii)(C). MacDonald v. Delta Air Lines, Inc. 94 F.3d 1437, 1444-45 (10th Cir. 1996).

lifting and/or carrying of objects weighing up to 25 pounds).  After this point, Plaintiff considered

himself as essentially cleared for all his normal duties except for driving, since his job did not

ordinarily entail heavy lifting.  There is no dispute that Zia knew about these restrictions, at least

as provided by the two medical certificates.  Some dispute exists as to whether Zia was formally

informed that Plaintiff's driving restrictions would end in January, 2003.  However, taking

Plaintiff's assertions as true at this point, Plaintiff discussed the restrictions with his supervisor,

Chad Reynolds, at some point prior to his termination.

       Plaintiff's pleaded facts and submitted evidence undermine his claim.  He presents no

evidence from which to infer that he was precluded from a class of jobs, or a broad range of jobs,

even with the comparatively short time frame of his recuperation period.  Rather, he insists that

his short-lived lifting restrictions posed no obstacle to performing his normal job functions, with

the exception of driving, which was also temporary.  He alleges no residual restrictions.  See, e.g.,

Resp. at 13 ("In fact, [driving] restricted [Plaintiff] in none of his work tasks, only the ability to

get to remote job locations. . . for the eight weeks remaining for his driving restriction," and

"[Plaintiff's] limitations would continue for a finite period of time"; Complaint, ¶ 24;[10] Pltff's

Dep., Ex. A at 27 ("My only restriction was not driving.  I could do everything").  Where an

individual shows only that he is unable to "perform a single, particular job," see 29 C.F.R. §

1630.2(j)(3)(i), the regulations and case law make clear that the individual has not shown that he

is substantially limited in the major life activity of working.  MacDonald v. Delta Air Lines, Inc.

94 F.3d 1437 (10th Cir. 1996); see also, Dutcher, 53 F.3d 723 (explaining that "the inability to

---

[10]  Paragraph 24 states: "Rushing did not routinely perform job functions that required
[sic] lifting in excess of 50 lbs and Rushing's . . . 'do not operate a motor vehicle' restriction
would have expired January 5, 2003. . . ."

perform one aspect of a job while retaining the ability to perform the work in general does not amount to substantial limitation of the activity of working").

An impairment affecting the ability to work does not substantially limit a major life activity unless the individual is precluded from a broad range of jobs.  Plaintiff's own characterization of his abilities, despite the restrictions in place, do not by a long shot resemble an inability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities.  Within three months of Plaintiff's surgery, initial lifting restrictions were modified to where, by Plaintiff's own statements, they had little or no effect on his regular job duties.  Pltff's Dep., Ex. A at 27:17-21 ("I was released to go back to my normal duties, except for driving, you know, and I don't lift fifty pounds everyday all day long, you know").  Plaintiff's temporary inability to perform the driving components of his job does not constitute a showing that Plaintiff was significantly restricted in performing a "broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities."  Cmp., e.g., Bristol v. Bd. of County Comm'rs, 281 F.3d 1148, 1161 n.5 (10th Cir. 2002) (intolerance to cold, lifting restrictions, and strenuous activity did not "substantially limit" major life activity of working in plaintiff who suffered heart attack); MacDonald, 94 F.3d 1437 (evidence that employer-airline disallowed aircraft mechanic terminated plaintiff from job taxiing aircraft due to impaired vision did not demonstrate that employer regarded him as being substantially limited in his ability to perform major life activity of working, since taxiing aircraft was only single, particular job, not class of jobs or broad range of jobs in various classes).

Although I have considered the temporary nature of Plaintiff's restrictions, my conclusion does not rest on that factor alone.  An impairment does not have to be permanent to rise to the

level of a disability, although short-term, temporary restrictions generally are not substantially limiting. Katz v. City Metal Co., 87 F.3d 26, 31 (1st Cir.1996), cited in Everist v. Blue Cross & Blue Shield, 2000 WL 1708504 (D.Kan., 2000). Along with duration of the impairment, I also consider other factors such as the nature, severity, and long-term impact of the impairment, in determining whether the impairment substantially limits a major life activity such that it would constitute a "disability" under the ADA. Id. Some conditions may be long-term or potentially long-term in that their duration is indefinite or unknowable. Such conditions, if severe, may constitute disabilities.

The plaintiff in Katz also suffered a heart attack. However, unlike Plaintiff in the instant case, Katz was still having trouble breathing and walking at the time of his trial, several years after the attack. In the instant case, the duration of Plaintiff's impairment, along with its attendant medical restrictions, was neither indefinite nor unknowable. Nor were there any medical sequelae which lingered after his lifting and driving restrictions ended. See, e.g., Aldrich v. Boeing Co., 146 F.3d 1265, 1270 (10th Cir.1998) (condition lasting almost 2 months didn't constitute disability under the ADA); Rakity v. Dillon Companies., Inc., 302 F.3d 1152 (10th Cir. 2002) (history of light duty restriction does not necessarily demonstrate record of substantial limitation in working) (relying on Colwell v. Suffolk County Police Dep't., 158 F.3d 635, 646 (impairment not substantially limiting where a police officer was hospitalized for a month, remained at home for six months, and was restricted to light duty for seven years after returning to work); Jewell,172 F.Supp.2d 212, 216 (plaintiff whose condition arose less than three months before defendant terminated his employment, and who enjoyed swift and full recovery from heart attack, failed to show substantial limitation in major life activity) (citing 29 C.F.R. § 1630, App. §

1630.2(j) (eight week recovery from broken leg is an impairment of "brief" duration);[11] cmp. with, Aldrich v. Boeing Co., 146 F.3d 1265, 1270 (10th Cir. 1998) (plaintiff's flexor tenosynovitis was a severe condition that was permanent or was expected to persist on a long-term basis because its anticipated duration was indefinite, unknowable, or was expected to be at least several months).

For the foregoing reasons, I find that Plaintiff has failed to raise a genuine issue of material fact regarding whether he is substantially limited in the major life activity of working. See, Doyal v. Okla. Heart, Inc., 213 F.3d 492 (10th Cir.2000) (plaintiff bears burden of raising genuine issue of material fact on each element of prima facie case). Accordingly, Defendant is entitled to summary judgment on the issue of whether Plaintiff is disabled under subsection (A) of the ADA, 42 U.S.C. § 12102(2), i.e., whether he has a physical or mental impairment that substantially limits one or more major life activities.

B.     "Regarded as" Disabled

Plaintiff alternatively argues that Defendant regarded him as having an impairment that substantially limited the major life activity of working, under subsection (C) of the ADA. To demonstrate that his employer regarded him as disabled, Plaintiff must present evidence that Zia mistakenly believes that he has a physical impairment that substantially limits one or more major life activities, or mistakenly believes that Plaintiff's actual nonlimiting impairment substantially limits one or more major life activities. See Sutton v. United Air Lines, Inc., 527 U.S. at 489. Thus, a person is regarded as having an impairment that substantially limits the person's major life

---

[11]   The present case poses the same "apparent contradiction" that faced the court in Jewell: plaintiff asserted being substantially limited in a major life activity while at the same time claimed that he was physically capable of all of the functions of the job he held. The Jewell court ultimately determined that plaintiff's heart condition did not substantially limit a major life activity, and thus plaintiff was not physically disabled within meaning of the ADA.

activities when other people treat that person as having a substantially limiting impairment, regardless of whether the individual actually has an impairment. MacDonald, 94 F.3d at 1444 (quoting and adopting 29 C.F.R. § 1630.2(l )). The hallmark of "regarded as" claims is the misperception -- either that a person has a substantially limited impairment that one does not really have, or that a person has a substantially limited impairment that is not quite so limiting. Subsection (C) of the ADA addresses the reality that society entertains "accumulated myths and fears about disability and disease" which are "as handicapping as are the physical limitations that flow from actual impairment." Sutton, 527 U.S. at 489 (quoted case omitted).

    *1.    Broad Range of Jobs*

A plaintiff asserting that he is disabled under subsection (C) must therefore show that his employer regarded him as having an impairment substantially limiting her ability to perform a broad range of jobs, rather than a single position. Doebele, at 1133. Plaintiff does not offer evidence other than that which shows that Zia regarded him as unable to drive -- which is consistent with Zia's statement of its position. Zia's failure to find Plaintiff a job that did not require driving does not amount to evidence that it regarded him as unable to perform a broad range of jobs as defined under the ADA-- just those which require driving as an incidental part of the job activity. Plaintiff offers no circumstantial evidence which might put an illegally motivated spin on Zia's recognition of the temporary physical restrictions imposed on Plaintiff by his doctors.

  "Where the recognition of [an ADA plaintiff's] limitations is not an erroneous perception, but is instead a recognition of fact, a finding that [p]laintiff was regarded as disabled is inappropriate." Lusk v. Ryder Integrated Logistics, 238 F.3d 1237, 1241 (10th Cir. 2001), cmp.,

e.g., Lucas 9 Fed.Appx. 809.  In Lucas, the record demonstrated that the County employer's assessment of the plaintiff's ability to perform the job of lieutenant was based specifically on the evidence from plaintiff's own physician that he needed to avoid repetitive use of stairs and the physical restraint of criminals.  Based on that record, the court found that the employer's assessment of plaintiff's ability to perform his job was not based on myth, fear or stereotype, and that the employer had correctly regarded plaintiff as having a physical impairment that prevents him from performing a particular job, which was insufficient as a matter of law to establish that the plaintiff was disabled under Subsection (C) of the ADA.

In Murphy v. United Parcel Service, Inc., 527 U.S. 516 (1999), summary judgment for the employer was affirmed where the plaintiff could not present a fact issue on whether he was regarded as disabled.  The plaintiff had been fired when he could not meet Department of Transportation ("DOT") requirements for a commercial driving license because of his hypertension.  Plaintiff presented himself as generally employable as a mechanic, except for being able to drive.  The district court agreed with plaintiff's self-assessment as a generally employable mechanic, pointing out that at most, plaintiff showed only that he was regarded as unable to perform the job of mechanic only when that job required driving a commercial motor vehicle.  Thus, the fact that the employer regarded the plaintiff as unqualified to work as a UPS mechanic because he could not drive a commercial vehicle was not enough to create an issue of fact on whether UPS regarded plaintiff as substantially limited in the major life activity of working.  527 U.S. at 2138-39.  Unlike Plaintiff's situation in the present case, there was no indication in Murphy that plaintiff's driving restriction was limited in duration. Similarly, in Rakity, 302 F.3d 1152, defendants were found not to have regarded plaintiff as disabled when they denied his

request for promotion based on plaintiff's lifting restrictions, since they regarded him as impaired in his ability to lift "only to the extent indicated in plaintiff's medical and employment records." 301 F.3d at 1162-63.

Zia makes no pretense of concealing that it considered Plaintiff unable to do any of the driving to the different work sites. Plaintiff does not dispute that his job normally required driving to local and remote sites where he carried out his tasks. To the extent that Zia regarded Plaintiff as unable to perform his regular job, Zia's perceptions were supported by the medical restrictions provided to the company by Plaintiff himself. There is no evidence that these perceptions extended beyond a belief that Plaintiff could not perform certain components of his usual job, as opposed to a broad class of service technician jobs. Cmp., e.g., Lucas, 9 Fed.Appx. at 813 (plaintiff's evidence "simply shows that the County regards him as having a physical impairment that precludes him from jobs requiring the use of stairs and physical contact with criminals," and did not show that the County regarded him as having a significant restriction in his ability to perform either a class of jobs or a broad range of jobs in various classes"); see also., McKay v. Toyota Mfg., U.S.A., Inc., 110 F.3d 369, 373 (6th Cir.1997), rehearing denied (1997) ("an impairment that disqualifies a person from only a narrow range of jobs is not considered a substantially limiting one" (quoting Wooten v. Farmland Foods, 58 F.3d 382, 386 (8th Cir.1995); Tardie v. Rehabilitation Hosp. of Rhode Island, 6 F.Supp.2d 125 (D.R.I.,1998) (plaintiff who was not restricted from working in general, but only restricted from working over forty hours a week, could not show that she suffered from an impairment that restricts her ability to perform a major life activity, and thus her contention that she suffered from an impairment which constitutes a disability under the statute was without merit).

## 2.    *Permissible Preferences*

Plaintiff contends that Zia should have accommodated his driving restrictions by temporarily assigning him to duties that did not require driving.  However, Zia's requirement that Plaintiff be able to drive is not in itself discriminatory.  Under Rakity, discrimination is "permissible" as long as the impairment does not substantially limit a major life activity.  Id., 302 F.3d at 1165 (citing Sutton, 527 U.S. at 490) ("The ADA allows employers to prefer some physical attributes over others, so long as those attributes do not rise to the level of substantially limiting impairments").  Zia admits that it considers driving to be an essential function of the job of a service technician.  Plaintiff agrees that in the normal course of his job, he drove to get to the various job sites and assignments.  Notwithstanding Plaintiff's desire to be assigned only non-driving components of a technician's job, under Sutton and Rakity, Zia is permitted to prefer workers who can drive, as long as the preferred characteristic does not substantially limit a major life activity.  Sutton, 527 U.S. at 490-91.  I have already determined that Plaintiff's lifting and driving restrictions did not substantially limit his major life activity of working.  Thus, Zia's insistence in using workers who could drive was itself not discriminatory, based on the undisputed facts of this case.

## 3.    *Role of Pretext Analysis*

Plaintiff's theory of discrimination can be distilled down to this: Zia did not accommodate him for positions that did not require driving, and therefore Zia regarded him as disabled.  This reasoning turns the normal inquiry in ADA cases on its head, and has been rejected by the Tenth Circuit.  In Rakity, the Tenth Circuit Court of Appeals devoted considerable attention to the order of analysis to be applied in "regarded as" claims, under Subsection (C).  In that case, the Court

made clear that whether an employer regards an individual as disabled, and whether that employer discriminated on the basis of disability, are separate legal questions. 302 F.3d at 1165. The Court affirmed summary judgment where the plaintiff did not present evidence that the employer regarded him as disabled, even though the employer had admittedly denied plaintiff a promotion because of his lifting restrictions imposed by a physician.

Cases involving the Rehabilitation Act and the ADA are analyzed under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and its progeny. See Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir.1997). After establishing a prima facie case, the burden falls to the employer to offer a legitimate nondiscriminatory reason for its employment decision, and then reverts to the plaintiff to present a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual -- i.e., unworthy of belief. Rakity, 302 F.2d at 1164. Just as the plaintiff in Rakity unsuccessfully attempted to equate his employer's failure to promote with the question of whether the employer regarded him as disabled, Plaintiff in the instant case urges the court to accept the proposition that Zia's failure to assign to work tasks not requiring driving leads to the inevitable conclusion that Zia regarded him as disabled. This proposition incorrectly conflates the requirements of a plaintiff's prima facie case with the pretext stage of the analysis.

Also, as Rakity explains, the shifting-burden analytical model is useless in this case. 302 F.3d at 1165. That framework is necessary only where a defendant claims that an adverse action was made for reasons other than the plaintiff's membership in a protected class. Id. In Rakity, the employer freely admitted that the decision not to promote plaintiff was made because of the plaintiff's lifting restriction. It was therefore undisputed that the employer was "discriminating"

on the basis of plaintiff's impairment, but because plaintiff's lifting impairment was not severe enough to constitute a protected disability, the "discrimination" was not illegal. In the context of the instant case, there are also no facts from which to infer illegal discrimination. Zia admits that it terminated Plaintiff because of his driving restrictions. Thus, the relevant inference (i.e., that Zia terminated Plaintiff because of his impairment), is undisputed, yet that inference cannot support a finding of discrimination.

C.      Whether Plaintiff is "Qualified"

The next step in the prima facie case would normally involve a determination whether a plaintiff is "qualified" under the ADA, i.e., determining (1) whether the individual can perform the essential functions of the job, and (2) whether any reasonable accommodation by the employer would enable that individual him to perform those functions. Pack v. Kmart Corp., 166 F.3d 1300 (10th Cir.1999) (citations omitted). However, this step is unnecessary because Plaintiff has failed to show that he is either disabled, or regarded as disabled, under the ADA. See, e.g., Poindexter v. Atchison, Topeka and Santa Fe Railway Co., 168 F.3d 1228 (10th Cir. 1999) (reversal based upon the "disability" prong eliminated the need to address other elements of prima facie case); Murphy v. UPS,141 F.3d 1185 (10th Cir. 1998), aff'd by Murphy v. United Parcel Service, Inc., 527 U.S. 516 (1999) ("because we have concluded that Mr. Murphy is not an individual with a disability, we need not reach the question of whether he is a qualified individual with a disability, i.e. whether, with or without reasonable accommodation, he could perform the essential functions of the job").

D.      Conclusion

For the foregoing reasons, Plaintiff has not shown triable evidence either that he is

disabled, or that Zia regarded him as disabled, under the ADA. With the failure of his prima facie case, Plaintiff cannot survive summary judgment on Count I of his Complaint, brought under the ADA, and this claim will be dismissed. Further, because Plaintiff must also satisfy similar prima facie requirements for claim in Count IV of the Complaint under the NMHRA, dismissal of Plaintiff's ADA claim constitutes a dismissal of Count IV as well.

## II.     Discrimination Based on Age

Plaintiff contends that his age was a factor in Zia's decision to terminate his employment. Defendant seeks summary judgment on this claim based on failure to exhaust as well as on its merits.

### A.     Exhaustion

Filing a charge with the EEOC is a prerequisite to suit under the ADEA. Smith v. Board of County Commissioners of Johnson County, Kan., 96 F.Supp.2d 1177, 1185 (D.Kan., 2000); Jones v. Runyon, 91 F.3d 1398, 1399 (10th Cir.1996) (discussing Title VII's similar provisions) (citing 29 U.S.C. § 626(d). Exhaustion is not mere etiquette; rather, it is a jurisdictional prerequisite. Jones, 91 F.3d at 1399.

In his general statement of facts, Plaintiff states that he filed a complaint of discrimination "based on his age (ADEA) and medical disability (ADA) with the New Mexico Human Rights Division and EEOC." Response at 5 ("Determination of Probable Cause"). However, the EEOC considered the charge solely in terms of Plaintiff's heart condition, and only as alleging violations of the ADA and the NMHRA. Ex. 5 at 1. Thus, it is clear that Plaintiff's EEOC charge did not include allegations of age discrimination. Plaintiff's brief is otherwise non-responsive on the issue of exhaustion.

The exhaustion requirement serves two purposes: to give notice of the alleged violation to the charged party and to give the EEOC an opportunity to conciliate the claim through the administrative process.  Ingels v. Thiokol Corp., 42 F.3d 616, 625 (10th Cir.1994).  A district court has jurisdiction over any charges of discrimination that are "like or reasonably related to" the allegations made before the EEOC, as well as charges that are within the scope of an EEOC investigation that "reasonably could be expected to grow out of the allegations." See, Leong v. Potter, 347 F.3d 1117 (9th Cir. 2003); Sitar v. Indiana Dept. of Transp. 344 F.3d 720, 726 (7th Cir. 2003) (plaintiff may not bring claims under Title VII that were not originally included in the charges made to EEOC unless claims are "like or reasonably related" to EEOC charges, and can be reasonably expected to grow out of EEOC investigation of the charges); see also Jones v. Runyon, 91 F.3d 1398, 1399 (10th Cir.1996)(act committed by an employer in retaliation for the filing of an EEOC complaint is reasonably related to that complaint, obviating the need for a second EEOC complaint).[12]

While Plaintiff does not argue that his ADEA claim is reasonably related to his exhausted

_____

[12] In Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 112-13 (2002), the United States Supreme Court addressed the related concept of the "continuing violation" doctrine, holding that discrete discriminatory acts under Title VII are not actionable if time-barred, even when they are related to acts alleged in timely filed charges.  Morgan dealt specifically with unexhausted claims where the incidents giving rise to those claims occurred more than 300 days prior to the filing of an EEOC charge. In a recent Tenth Circuit case, Martinez v. Potter, 347 F.3d 1208 (10th Cir. 2003), the Tenth Circuit stated that the rule in Morgan was equally applicable to discrete claims based on incidents that occurred after the filing of an EEOC charge.  Id. at 1210-11.  Thus, Martinez could be read as implying that Morgan completely eliminates the allowance of claims reasonably related to the allegations in an EEOC charge.  However, Martinez had before it only unexhausted claims which arose prior to the filing of an EEOC charge, which appears to leave intact the concept that reasonably related claims brought within 300 days of the filing would still be allowed in the judicial complaint.

ADA claim, such an argument would be futile, because there would be no basis to allow the

ADEA claim to be included in the present judicial complaint. The EEOC's inquiry into Plaintiff's

charge focused on Plaintiff's medical disability and physical limitations, the functions of his job in

relation to his impairment, and the issue of reasonable accommodation -- all part and parcel of an

investigation into discrimination based on disability. Ex. 5. The focus of inquiry for an ADEA

claim would be different, because such a claim alleges a different type of discrimination. Thus, I

find that allegations related to an age discrimination claim cannot be reasonably inferred from a

disability claim, nor would they be expected to grow out of a charge alleging discrimination based

on disability. See, Ajayi v. Aramark Bus. Serv., Inc., 336 F.3d 520, 527 (7th Cir. 2003)

(allegations of a different type of discrimination are not reasonably related to those in an EEOC

charge unless the allegations supporting the new type of discrimination can be inferred from the

facts contained in the EEOC charge). See, e.g. Leong, 347 F.3d 1117 (disability claim not

reasonably related to exhausted Title VII claim); Sitar, 344 F.3d at 726 (worker's claims of sex

discrimination and sexual harassment were not reasonably related to her Equal Employment

Opportunity Commission (EEOC) charge of retaliation and noting that retaliation, sex

discrimination, and sexual harassment charges are not "like or reasonably related" to one another

to permit an EEOC charge of one type of wrong to support a subsequent civil suit for another);

Smith v. Board of County Com'rs of Johnson County, Kan., 96 F.Supp.2d at 1185 (claims for

hostile work environment based on age and retaliation under the ADEA barred because plaintiff

did not include them within her EEOC charge which alleged age discrimination) (citing other

cases); see also, Coleman v. Unified Government of Wyandotte County/Kansas City, KS, unpubl.

opin., 2003 WL 22801920 (D.Kan., Oct 21, 2003) (age discrimination claim not reasonably

related to claim of race discrimination).

Plaintiff's claim of age discrimination, brought under the ADEA in Count II of his Complaint, was never exhausted. Accordingly, Defendant is entitled to summary judgment on this claim as well, and it will be dismissed. My conclusion that the claim is not exhausted precludes a consideration of the claim on its merits.

## III.    Violations Under the FMLA

Under 29 U.S.C. § 2617(a), an employee may bring an action to recover damages for violations of § 2615. Claims alleging violations of the FMLA are brought under two recognized theories of recovery: the "entitlement or interference" theory which arises from the FMLA's creation of substantive rights, and the "retaliation or discrimination" theory, which insures the availability of those rights. Smith v. Diffee Ford-Lincoln-Mercury, Inc. 298 F.3d 955, 960 (10th Cir. 2002); Rice v. Sunrise Express, et al., 209 F.3d 1008 (7th Cir. 2000) (citing King v. Preferred Technical Group, 166 F.3d 887 (7th Cir. 1999) (describing the FMLA as establishing "two categories of broad protections for employees")).

The entitlement or interference theory concerns an employee's rights to extended leave and reinstatement under the FMLA.[13] Specifically, the FMLA entitles an eligible employee to take a total of twelve workweeks of leave during any twelve-month period for serious health conditions that make the employee unable to perform his job functions. 29 U.S.C. § 2612(a)(1)(D). After the period of qualified leave expires, the employee is entitled to be reinstated to the former position or an equivalent one with the same benefits and terms of the employment

---

[13] That provision states: "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided in this subchapter."

that existed prior to the exercise of the leave. 29 U.S.C. § 2614(a). The retaliation or

discrimination theory arises from § 2615(a)(2), which makes it "unlawful for any employer to

discharge or in any other manner discriminate against any individual for opposing any practice

made unlawful by this subchapter."

Plaintiff alleges that Zia "interfered" with his entitlement to FMLA rights "by attempting

to terminate his employment without justification," Complaint, ¶ 63, and retaliated by terminating

him because he took FMLA leave.

A.    Interfering with Rights Under FMLA

For claims alleging interference with a right to medical leave or reinstatement under the

FMLA, a plaintiff must demonstrate by a preponderance of the evidence, an entitlement to that

right.  Smith, 298 F.3d at 960.  The intent of the employer is irrelevant and immaterial for claims

brought under the interference or entitlement theory. Id.; Vanmeveren v. Whirlpool Corp. 65

Fed.Appx. 698 (10th Cir. 2003) (quoting King, 166 F.3d at 891) ("Plaintiff has neither asserted

nor proved a FMLA interference claim; rather, she has asserted a FMLA retaliation claim, for

which the employer's intent is relevant"); Rice, 209 F.3d at 1017.  At the same time, however, an

employee who requests leave or is on leave "has no greater rights than an employee who remains

at work." Id. (citing Gunnell v. Utah Valley State College, 152 F.3d 1253, 1262 (10th Cir. 1998)

(citing 29 C.F.R. § 825.216(a))).

1.    *Entitlement to Extended Leave*

Plaintiff appears to be asserting general objections to his treatment regarding his extended

leave which have little to do with issues of being allowed to take leave, or with reinstatement.

Since he in fact received his full entitlement to extended leave, Plaintiff has no claim under §

2612(a)(1)(D).

The FMLA requires that an employee provide at least verbal notice sufficient to make the employer aware that the employee needs leave provided under the statute. See Bryant v. American Airlines, Inc, 75 Fed. Appx. 699 (10th Cir. 2003) (quoting 29 C.F.R. § 825.302(c)). The notice must be given "as soon as practicable" except in an emergency situation. 29 C.F.R. § 825.303(a). There is no evidence that Plaintiff ever made a request which can be considered to be a timely request for FMLA-qualifying leave. Plaintiff contends that he made statements to Chad Reynolds to the effect that he would not be released back to work after his heart attack until he had his doctor's approval. By his own deposition testimony, Plaintiff was familiar with company policy which required requests for vacation time to be submitted in writing, yet does not explain why he assumed that his extended leave kicked in automatically following exhaustion of his accrued leave and sick time. Nor was Plaintiff's medical condition such that giving notice would have been unduly difficult. See Pltff's Dep. at 18-19; cmp., Holmes v. The Boeing Co. 166 F.3d 1221, unpubl. opin., 1999 WL 9760 (10th Cir. 1999) (plaintiff unsuccessful in alleging that his physical condition was such that he could not comply with defendant's reasonable notice requirements).

Plaintiff does not dispute that he was already on extended leave before he submitted a written request on September 10, 2002. He also does not dispute Defendant's representations as to the total amount of extended leave he received, or that his entitlement to FMLA leave was ultimately exhausted.[14] Therefore, he cannot claim that Zia interfered with his right to leave under

_____

[14] Plaintiff received a total of 17 weeks leave, using four or five weeks of accumulated leave within that period. See Hamilton Aff.

26

the FMLA.

He also infers that Zia had no right to request a second medical opinion pursuant to 29 U.S.C. § 2613(c) because of its "dissatisfaction" with the medical report it had received, and that Zia should have sent him to a different provider as required under the law and should have paid for the expense of the new medical report. Plaintiff misreads that provision. Section 2613(b) allows an employer to "require that a request for leave . . . be supported by a certification issued by the health care provider . . . ."

Section 2613(c)(1) states in part:

> In any case in which the employer *has reason to doubt the validity of the certification* provided under subsection (a) of this section for leave under subparagraph (C) or (D) of section 2612(a)(1) of this title, the employer may require, at the expense of the employer, that the eligible employee obtain the opinion of a second health care provider designated or approved by the employer concerning any information certified under subsection (b) of this section for such leave.

(emphasis added). The problem with Plaintiff's contention is that there are no facts in this case -- viewed favorably to Plaintiff -- which would suggest that such a request violated the FMLA, except for Plaintiff's lone statement in the response brief that Zia's request for a "further medical report. . . was not a valid exercise of its right to obtain a second medical opinion. . . ." Response at 8.

According to Defendant's response to an interrogatory, "[w]hen Mr. Rushing requested that he be granted leave, Zia requested more specific information regarding his medical condition." Ex. F at 6. Under the relevant FMLA provision's express language, the requirement that an employer obtain a second opinion at its own request arises only when there is "reason to doubt the validity of the certification provided . . . for leave" taken because of a serious health

condition. § 2613(c)(1). Plaintiff was under an obligation to provide a sufficient medical basis for FMLA-qualified leave.[15] His "request" for extended leave consisted of a hand-written note brought in by his wife while he was already into two months of FMLA-qualified leave. The August 23rd medical certificate, which was not submitted in connection with his extended leave request, was almost several weeks old by the time Plaintiff actually requested extended leave on September 10, 2002. There is no other evidence that Zia made a request for a second opinion, or that its request for a further medical report was made because of any validity concerns. The only reasonable inference from the undisputed facts is that Zia requested an updated medical certificate sufficient to support Plaintiff's request for leave.

2.      *Reinstatement*

Plaintiff challenges his termination as a violation of his rights under FMLA. This challenge can be construed as a claim under the interference or entitlement theory because Plaintiff was not reinstated. See Complaint, ¶63. It can also be construed as a retaliation claim, which will be addressed later.

An employee's right to job reinstatement under § 2614(a)(1) is limited by § 2614(a)(3), which basically states that the substantive right created by § 2614(a)(1) does not include an

---

[15] A medical report requires considerable information before it is considered "sufficient" under § 2613(a):

"(1) the date on which the serious health condition commenced;
(2) the probable duration of the condition;
(3) the appropriate medical facts within the knowledge of the health care provider regarding the condition;. . .
(B) for purposes of leave under section 2612(a)(1)(D) of this title, a statement that the employee is unable to perform the functions of the position of the employee; . . . ."

entitlement to any right, benefit, or condition to which the employee would not have been entitled

if the leave had not been taken. <u>Rice</u>, 209 F.3d at 1018. In other words, an employee who has

requested FMLA leave, or is on such leave, does not have greater rights than an employee at

work. <u>Gunnell</u>, 152 F.3d at 1261.[16]

     As mentioned earlier, for claims alleging interference with a right to medical leave or

reinstatement under the FMLA, the concept of pretext or shifting burdens does not come into play

because the intent of the employer is irrelevant and immaterial. <u>Smith</u>, 298 F.3d at 960.   <u>Rice</u>

nicely sets out how such a claim unfolds, emphasizing that under a plain reading of § 2614(a)(1)

and §2614(a)(3), the employee retains the ultimate burden of establishing a right to the benefit:

> If the employer wishes to claim that the benefit would not have been available even if the employee had not taken leave, the employer must submit evidence to support that assertion. When that burden of going forward has been met, however, the employee must ultimately convince the trier of fact, by a preponderance of the evidence, that, despite the alternate characterization offered by the employer, the benefit is one that falls within the ambit of § 2614(a)(1); the benefit is one that the employee would have received if leave had not been taken. For instance, if the employer claims that the employee would have been discharged or that the employee's position would have been eliminated even if the employee had not taken the leave, the employee, in order to establish the entitlement protected by § 2614(a)(1), must, in the course of establishing the right, convince the trier of fact that the contrary evidence submitted by the employer is insufficient and that the employee would not have been discharged or his position would not have been eliminated if he had not taken FMLA leave.

<u>Rice</u>, 209 F.3d at 1018.

     To avoid summary judgment on this claim, Plaintiff must present some evidence, or a

dispute of some material fact, to suggest that if he had not taken extended leave, he would still

---

[16] "Nothing in this section shall be construed to entitle any restored employee to (A) the accrual of any seniority or employment benefits during any period of leave; or (B) any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken the leave." § 2614(a)(3).

have a job. At the risk of beating the proverbial dead horse in an evidentiary sense, Plaintiff has

elsewhere asserted that Defendant wrongfully kept him from returning to work because of his

driving restrictions.  Defendant has admitted that it terminated Plaintiff when his FMLA leave

expired in October, 2002, because Plaintiff could not drive company vehicles to perform his work.

Plaintiff was temporarily restricted from driving, whether or not he took FMLA leave, and he

raises no triable material facts which suggest that Zia's reason for not allowing him back -- his

driving restrictions -- was insufficient.  See, e.g., Smith, 298 F.3d 955 (employee may be

dismissed, preventing her from exercising her statutory right to FMLA leave--but only if the

dismissal would have occurred regardless of the employee's request for or taking of FMLA leave)

(citing Gunnell,152 F.3d 1253); Sylvester v. Dead River Co., 260 F.Supp.2d 181 (D.Me. 2003)

(where plaintiff's position changed from full-time position as gas station manager to part-time,

lower-paid position as pump attendant, FMLA provisions were not  transgressed because he

would have been in the same position with respect to the restructuring/downsizing even if he had

not been on leave at the time the operative changes were made); St. Hilaire v. Minco Products,

Inc. 288 F.Supp.2d 999 (D.Minn., 2003).

A reason for dismissal which is "insufficiently related to FMLA leave will not support

recovery under an interference theory." Smith, 298 F.3d at 961 (citing McBride v. Citgo

Petroleum Corp, 381 F.3d 1099 (10th Cir. 2002) (discussing claims brought under interference

theory). Plaintiff's need for extended leave and his termination may well have resulted from the

same cause, i.e., his heart attack and subsequent medical restrictions.  However, any causal link

between the termination and FMLA is indirect, and therefore, insufficient to satisfy Plaintiff's

burden on this claim.  Id. (causal link between employee's dismissal and FMLA was inadequate as

a basis for recovery under FMLA where plaintiff had been subjected to serious discipline before her leave and was fired while on leave). Therefore, Defendant is entitled to summary judgment on Count III in the Complaint, specifically on the theory of Plaintiff's claim under the FMLA regarding Defendant's interference with his right to reinstatement under § 2615(a)(1).

B.    Retaliation Claim Under the FMLA

Plaintiff also asserts a claim of retaliation under the FMLA, which I address as a claim brought under a retaliation/discrimination theory. To establish a prima facie case of FMLA retaliation, Plaintiff must show that (1) he engaged in protected activity under the applicable act; (2) he subsequently suffered an adverse employment action; and (3) a causal connection existed between the protected activity and the adverse employment action. Richmond v. ONEOK, Inc., 120 F.3d 205, 208 (10th Cir.1997). An analysis of FMLA retaliation claims involves the application of the traditional burden- shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973), and applied above to Plaintiff's ADA claim.[17] Richmond, 120 F.3d at 208; Gunnell, 152 F.3d at 1263 (explaining that plaintiff asserting retaliation claim has the ultimate burden to demonstrate that the challenged employment decision was the result of intentional retaliation). Unlike FMLA claims brought under an interference or entitlement theory, an employer's intent is relevant in FMLA retaliation claims. Rice, 209 F.3d at 1017 (citing King, 166 F.3d at 891) ("issue becomes whether the employer's actions were motivated by an impermissible retaliatory or discriminatory animus"); Vanmeveren v. Whirlpool Corp. 65

---

[17] This is the familiar burden-shifting framework used to analyze Title VII and ADA claims. See Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir.1997) (Title VII); Doebele v. Sprint et al., 342 F.3d 1117, 1139 (10th Cir. 2003) (ADA).

Fed.Appx. 698 (10th Cir. 2003) (emphasizing same).

While there is a temporal proximity between Plaintiff's FMLA leave and his termination, Plaintiff fails to carry his ultimate burden of showing that Zia's proffered reasons were pretextual, in other words, that Zia's reasons for terminating him were because he requested and took extended leave. See, Murray v. City of Sapulpa, 45 F.3d 1417, 1421 (10th Cir. 1995) (ultimate burden of persuasion in burden-shifting inquiry rests on plaintiff) (citing Texas Dept. of Comm. Affairs v. Burdine, 450 U.S. 248, 250 (1981)). Plaintiffs typically show pretext by revealing "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them unworthy of credence." Jones v. Barnhart, 349 F.3d 1260 (10th Cir. 2003) (citing Morgan v. Hilti, Inc., 108 F.3d at 1323). Plaintiff claims that light duty work was available, but does not offer any evidence which supports either that assertion, or the assertion that the real reason Zia had for not making such work available was because he took FMLA leave.

Zia offers a legitimate reason for termination, contending that it had no choice but to terminate him, since Plaintiff had exhausted all of his available leave, and was still unable to drive company vehicles to perform his work. Zia maintains that Plaintiff's position was eliminated after he was terminated and that Zia was not hiring service technicians during the time Plaintiff was recuperating and seeking to return. Plaintiff's assertion that work was available which did not require driving is unsupported by any evidence, while Zia's contentions are well-supported by affidavits and exhibits.

Zia offers factual evidence which supports its contention that the company was down-sizing and cross-training its service technicians to perform a broad range of job functions, and that

no service technician jobs were open during the period of July to October, 2002, when Plaintiff was seeking work. See, Ex. A-1 to Hamilton Aff.; Reynolds Aff., ¶ 3. Zia consolidated job functions and reduced the number of service technician positions by contracting out some construction and installation work. Positions held by several other service technicians who left were also eliminated. One of them, Steve Sanchez, who functioned as a mechanic and maintained inventory, quit on July 19, 2002, while Plaintiff was recuperating. Reynolds states that the company decided to eliminate the mechanic slot left behind by Sanchez' resignation, and spread out the inventory duties among the remaining service technicians and the supervisors. Reynolds Aff., ¶ 3. New hires for service technicians were made either before Plaintiff had his heart attack, or after he was terminated.[18] Only one individual, Johnny Tucker, was hired during that time – on July 15, 2002 – to be available to do meter reading as needed. Reynolds Aff., ¶ 4. There were no other new hires until after Plaintiff was terminated in October, 2002. Plaintiff does not challenge Defendant's statement that he never reapplied for a job with Zia after he was terminated.

Chris Mitchell was a service technician hired by Zia in September, 1999. Plaintiff relies on statements in Mitchell's affidavit to rebut Zia's explanations for its decision to terminate him. Unfortunately for Plaintiff, most of Mitchell's statements are not suitable for summary judgment purposes. Mitchell claims to "know" that Plaintiff talked with Reynolds about light duty work, about doing the ordering and light maintenance around the shop and being assigned service work "when he could accompany other technicians." Mitchell Aff., ¶ 9. However, because Mitchell was not actually present at this conversation, it does not qualify as personal knowledge sufficient

_____

[18] These positions were for service technicians who "were called upon to perform a variety of job tasks." Reynolds Aff., ¶ 4. One possible exception to this statement might be one person who was hired in January 2002 because he had welding skills.

to rebut Zia's position on summary judgment.  See <u>Tavery v. U.S.</u>, 32 F.3d 1423, 1426 n.4  (10th Cir. 1994) (Under Fed.R.Civ.P. 56(e), only statements "made on personal knowledge" will support a motion for summary judgment).

Mitchell's remaining statements are either irrelevant or immaterial. For example, his statement regarding Plaintiff's conversation with Reynolds is not inconsistent with Reynold's representation that he never told Plaintiff light duty work was available, but that he would have to check with corporate headquarters because he "did not have the authority to create a new job." Reynold's Aff., ¶ 5.[19]  Mitchell's statements about other service technicians hired by Zia are immaterial to the issue of whether positions for service technicians (without even considering the driving issue) were available during the time Plaintiff was seeking to return to work at Zia. Mitchell Aff., ¶ 15 ("I know Zia was actively recruiting for new employees in 2003").  This is particularly so because Plaintiff does not dispute Defendant's statement that he never reapplied for any position at Zia after October, 2002, or after January, 2003 when his driving restrictions were lifted.

Mitchell claims that there was "absolutely no question there was work available and Zia was attempting to hire new service technicians during the time Harold Rushing was attempting to return to work." Mitchell Aff., ¶ 18.  This statement ostensibly goes to the material fact of available work, but presents no challenge to Defendant's contention that Plaintiff's termination was based on his inability to drive.  While I question whether this particular statement of Mitchell

---

[19]  Reynolds stated that when he checked with Jay Suko, Vice President of Operations at Zia's headquarters in Wyoming, Mr. Suko said that Plaintiff could not return to work until he was fully released medically because that kind of position was not available with the company.  Aff., ¶ 5.

is based on personal knowledge, the statement even if made with personal knowledge does not suggest that any service technician position did not require driving. Mitchell does claim that inventory duties initially performed by Steve Sanchez were "assigned" to Gary Lemon, a construction foreman. Mitchell Aff., ¶ 10. The fact that Lemon may have done inventory work is not inconsistent with Reynold's statement that these duties became shared among supervisors and service technicians after Sanchez quit. While the word "assigned" has some connotation that inventory became Lemon's responsibility, the implication is not enough to create a triable issue of fact for the proposition that Zia had a position available which did not require driving, and not enough to lend an inference of some other reason for Zia's decision to terminate Plaintiff.

In order to preclude summary judgment on his FMLA retaliation claim, it is Plaintiff's burden to raise a factual issue on whether the legitimate reasons offered by the Defendant "were not its true reasons, but were a pretext for discrimination." Doebele v. Sprint et al., 342 F.3d 1117, 1139 (10th Cir. 2003). Plaintiff has not presented any circumstantial evidence which might reasonably infer that Zia did not terminate him because of his driving restriction, but because he had taken FMLA leave. Accordingly, Zia's is entitled to summary judgment on Plaintiff's Count III in the Complaint, specifically on the theory of Plaintiff's claim of retaliation under the § 2615(a)(2) of the FMLA. Plaintiff's claims brought under the FMLA accordingly will be dismissed.

## CONCLUSION

Plaintiff failed to show that he is either "disabled," or was "regarded as disabled" for purposes of the Americans with Disabilities Act ("ADA"). Therefore, Plaintiff has not made a prima facie case for his ADA claim asserted in Count I of the Complaint. This Court does not

have jurisdiction over Plaintiff's Age Discrimination in Employment Act ("ADEA") claim alleged in Count II of the Complaint because Plaintiff did not administratively exhaust this claim. In Count III, Plaintiff alleged violations of the Family and Medical Leave Act ("FMLA"), but failed to show that Zia interfered with his rights under the FMLA, and also failed to show that Zia retaliated against him because he took FMLA-qualified leave. Plaintiff's claim under the New Mexico Human Rights Act in Count IV fails for the same reasons as did his ADA claim.

Defendant's termination of Plaintiff's employment the day after Plaintiff exhausted his FMLA loan may very well be a lousy way to treat an employee with more than twelve years of service, but the undisputed facts of this case and the controlling precedent mandate that the Court grant Defendant's Motion for Summary Judgment. Accordingly, all of Plaintiff's claims shall be dismissed.

**THEREFORE**,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (**Doc. 16**) is GRANTED as follows:

 (1) Plaintiff's ADA claim asserted in Count I in the Complaint is DISMISSED WITH PREJUDICE for the above stated reasons;

(2) Plaintiff's claim asserted in Count II under the ADEA is DISMISSED WITHOUT PREJUDICE for reasons stated above;

(3) Plaintiff's claim under the FMLA in Count III is DISMISSED WITH PREJUDICE for reasons stated above; and

(4) Plaintiff's claim in Count IV brought under the NMHRA is DISMISSED WITH PREJUDICE for the above stated reasons stated above.

The Court's findings herein dismiss Plaintiff's claims against Defendant in their entirety.

A Final Judgment in accordance with this Memorandum Opinion and Order shall issue.

_____
UNITED STATES DISTRICT JUDGE